IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2010

## DORMAN O'NEAL ELMORE, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 5849    David Patterson, Judge**

-------

**No. E2009-01075-CCA-R3-PC - Filed May 17, 2010**

-------

A Cumberland County jury convicted the petitioner, Dorman O'Neal Elmore, Jr., of five counts of rape, Class B felonies. The trial court sentenced the petitioner to an effective sentence of twenty-two years in the Tennessee Department of Correction. The petitioner pursued a delayed appeal pursuant to the Post-Conviction Procedure Act, and this court affirmed his convictions and sentences. In his post-conviction petition, the petitioner alleges that he received ineffective assistance of counsel at trial. Specifically, the petitioner argues that trial counsel's failure to file various pre-trial motions, to properly prepare and investigate the case, and to investigate the victim's background constituted deficient performance and prejudiced the defense. The post-conviction court denied relief. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Joseph M. Tipton, P.J., and James Curwood Witt, Jr., JJ., joined.

Caroline E. Knight, Crossville, Tennessee, for appellant, Dorman O'Neal Elmore, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

This court, in its opinion on delayed appeal, summarized the facts underlying this case as follows:

In May of 2000, a Cumberland County grand jury returned a multi-count indictment charging the [petitioner] with eight counts of rape of his ex-wife's teenage daughter. Prior to trial, the State dismissed counts four through six of the indictment. June Walker, the victim's mother began dating the [petitioner] in October of 1996, and the [petitioner] moved into the Walker home around February of 1997. At trial, the victim testified that the [petitioner] raped her on five separate occasions. The first incident occurred when the victim's mother took the victim's brother to the hospital in March of 1997, when the victim was thirteen years old. The victim testified that the [petitioner], who at the time was wearing a pair of tan shorts, came into her bedroom that evening, and "he took my arms and took them over my head. And he took my pants off and raped me." The victim further testified that she tried to kick the [petitioner] and push him away without success. The [petitioner] explained to the victim that because "he couldn't get it from [her] mother, . . . he'd get it from [the victim]." Furthermore, the victim testified that she began to bleed, and the [petitioner] told her that she had lost her virginity. He also warned the victim that if she told her mother about what happened, he would kill the entire family.

The second such incident occurred the following day. The victim testified that the [petitioner] picked her up from school and took her home. The two were alone in the house, and the [petitioner] called the victim upstairs to her mother's bedroom. Believing that the [petitioner] was going to apologize to her because of his actions the previous night, the victim walked upstairs. At this time, the [petitioner] again removed the victim's pants, held her down, and raped her, while wearing a condom. The third such event, which the victim testified she believed occurred in April of 1997, took place as the victim sat in the passenger seat of the car near a set of dumpsters in the Linary community of Cumberland County. The [petitioner] forcibly took the victim's hand from the side of her seat, unzipped her pants, and "stuck his penis in [her] vagina."

The victim moved to West Virginia at the end of the 1997 school year to live with her father. She attended school in West Virginia the following school year. The [petitioner] and the victim's mother married in February 1998, and the victim returned to Crossville in August of 1998. The [petitioner] and the victim's mother divorced in October of 1998 but continued to maintain a relationship. The fourth incident took place in October of 1998 when the victim's grandmother sent her with the [petitioner] to buy a gallon of milk. The victim testified that the [petitioner] stopped behind Cat's Car Wash, where

"he unzipped his pants and stuck [the victim's] hand over his penis. And he stuck it in [her] mouth and started pushing [her] head up and down." Two weeks before Christmas in December of 1998, the fifth incident occurred when the [petitioner] asked the victim to go to Wal-Mart with him ostensibly to look at a ring for her mother for Christmas. Instead, the [petitioner] drove the victim to the Camelot community where he told the victim to exit the vehicle. The victim testified, "he pulled my pants down to my ankles and laid me on the hood of his car and stuck his penis in my vagina." The victim kicked the [petitioner] and "busted his mouth."

Several days before New Years, the victim told her mother and the [petitioner] in a room full of people that the [petitioner] had raped her. In response, the victim's mother told the [petitioner] to get out of the house, and she reported the rapes to law enforcement. The victim's mother continued to communicate with the [petitioner] and recorded their conversations on two separate occasions, once on the phone and once in person at a park in the presence of the victim. The tape recordings were admitted into evidence with redactions. Initially, the [petitioner] admitted raping the victim twice, but the victim's mother testified that after the victim listed each incident, the [petitioner] admitted to each of them.

At the close of proof at the February 15, 2001 trial, the jury found the [petitioner] guilty of all five counts of rape as indicted. Following a sentencing hearing on April 11, 2001, the trial court sentenced the [petitioner] to eleven years for each count of rape. For sentencing purposes, counts one, two, and three were grouped together with the sentences running concurrently. Additionally, counts seven and eight were grouped together with the sentences running concurrently. The sentences from the two groups were ordered to be served consecutively for an effective sentence of twenty-two years in the Department of Correction. The judgment of conviction was entered on April 23, 2001.

On June 14, 2001, the [petitioner] filed a motion for new trial, which was denied. No notice of appeal was filed. The [petitioner] filed several motions in an attempt to determine the status of his appeal. On October 7, 2004, he filed a pro se "Motion to Produce Transcripts/ Records." He also filed a pro se Writ of Mandamus on January 24, 2005, alleging that his trial counsel had falsely represented to him that he had in fact filed an appeal. The record reflects that in an order dated March 21, 2005, the trial court appointed post-conviction counsel to represent the [petitioner] and ruled that it would

treat the [petitioner]'s motions as a "Motion for Delayed Appeal and/or Post Conviction Relief Petition."[FN1]

FN1. The record reflects that appointed counsel also filed a separate petition for post-conviction relief seeking the delayed appeal of his rape convictions based upon trial counsel['s] . . . failure to do so.

A post-conviction hearing was held on August 31, 2005, at which the [petitioner] asserted that he was mislead to believe that trial counsel had in fact filed an appeal. On September 13, 2005, the trial court entered an order pursuant to Tennessee Code Annotated section 40-30-113 (2003) which provided that "the [petitioner] shall file either an appeal or written waiver of appeal within (30) days herefrom." Relying upon *Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003), the trial court concluded that the [petitioner] "erroneously believed that trial counsel had filed an appeal and wherefore due process requires a tolling of the [one-year] statute of limitations" for post-conviction petitions. On September 20, 2005, the [petitioner] filed a notice of appeal.

*Dorman O'Neal Elmore, Jr. v. State*, No. E2005-02263-CCA-R3-PC, 2006 WL 2482949, at *1-3 (Tenn. Crim. App. at Knoxville, Aug. 29, 2006). On appeal, the petitioner challenged the sufficiency of the evidence, the admission into evidence of the audiotaped conversations between the petitioner and the victim's mother, and his sentencing. This court affirmed the petitioner's convictions and sentences, finding that the evidence was sufficient to uphold his convictions, that he waived the issue of evidentiary error, and that his sentence was appropriate.

The present appeal stems from the petitioner's amended petition for post-conviction relief, filed on October 16, 2007. The post-conviction court held an evidentiary hearing on March 20, 2009, at which trial counsel and the petitioner testified.

On direct examination, trial counsel testified that the trial court appointed him to represent the petitioner on May 30, 2000. He agreed that the indictment did not list the exact time and dates of the offenses. He did not file a motion for a bill of particulars because the district attorney general had an open file policy that enabled him to estimate the possible days on which the offenses occurred, and he used the locations of the offenses coupled with estimated days to determine where the petitioner was at the time of each offense. Trial counsel did not file a notice of alibi. He did not "recall any particular outrage . . . in the public" over the offenses and did not file for a change of venue. Trial counsel filed a motion for discovery and testified that the state provided him with everything in its file. He did not

recall any exculpatory evidence and did not file a motion to compel specific evidence. Trial counsel did not request funds from the Administrative Office of the Courts for an investigator. He said that an investigator could possibly have assisted in locating witnesses, but he did not recall "any witness to the events, other than . . . the [petitioner] and the victim." In the course of his investigation of the case, he went to the location of one of the events, but he did not speak to "any individuals that may have been present. To [his] knowledge[,] there were no other people present." He did not investigate the background of the victim, but he learned through audiotaped conversations between the petitioner and the victim's mother that the victim had previously accused an individual of a sexual offense, for which the individual pled guilty. Trial counsel did not file a Rule 412 motion "to ask the court to consider allowing the jury to hear proof of [the] victim's prior sexual conduct." He testified that information about her sexual history would have bolstered her credibility because the individual's guilty plea substantiated her accusation against him.

On cross-examination, trial counsel testified that he filed a motion to suppress the audiotaped conversations because he believed they were "highly prejudicial."

The petitioner testified that he did not review the audiotaped conversations with trial counsel, but counsel provided him with a copy of the audiotape. The petitioner said he could not hear anything on the copied tape. The petitioner said that he would have liked trial counsel to investigate the allegations that the victim made against the individual who pled guilty. He was familiar with the allegations because he accompanied the victim and her mother to the individual's parole hearing. The petitioner stated that he believed that trial counsel did not investigate his case at all. He and his father met with trial counsel at counsel's office but did not discuss much. Trial counsel told him there was a plea bargain available, but at their next meeting, trial counsel said that the state had taken the offer "off the table." The petitioner testified that there were inconsistencies at trial regarding the locations of the offenses. He did not go to the locations with trial counsel or assist trial counsel in finding witnesses at those locations. The petitioner claimed that the state withheld exculpatory evidence from him because the audiotaped conversations were originally on five microcassette tapes that were recorded onto one larger tape. The petitioner testified that he did not know what specific statements would have been recorded on the microcassette tapes, but he maintained that he made no admissions of guilt.

On cross-examination, the petitioner said that trial counsel tried to suppress parts of the audiotaped conversations but not the conversations in their entirety. He did not have a file of everything that trial counsel had. On re-direct examination, the petitioner testified that he had two "sit-down" meetings with trial counsel prior to trial, each approximately twenty minutes long. He did not receive any written communication about a plea agreement.

On April 6, 2009, the post-conviction court filed an order denying post-conviction relief. The petitioner timely appealed the denial.

**Analysis**

On appeal, the petitioner argues that trial counsel provided ineffective assistance. Specifically, he contends that counsel's failure to file certain pre-trial motions and notices, including a notice of alibi, motions for a bill of particulars, funding for an investigator, a change of venue, and to compel the state to produce exculpatory evidence, fell below an objective standard of reasonableness. Additionally, he contends that trial counsel's failure to investigate and prepare for trial and failure to request that the court allow the jury to hear evidence of the victim's sexual history constituted deficient performance. The petitioner argues that trial counsel's deficient performance prejudiced the defense. The state responds that trial counsel provided effective assistance. We agree with the state.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the factual allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id.*

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.* at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).  The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel.  *Goad*, 938 S.W.2d at 369.  However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation.  *Id.* (citations omitted).

The petitioner presented no proof that counsel's performance was deficient other than the conclusory allegations he made in his testimony.  Based on trial counsel's testimony that he filed pre-trial motions for discovery and suppression of damaging evidence, that he did not recall damaging publicity, and that the state had an open file policy, coupled with the post-conviction court's finding as a matter of fact that there was no exculpatory evidence, we conclude that counsel's performance was not deficient when he did not file motions for a bill of particulars, a change of venue, and to compel the state to produce evidence.  The petitioner failed to present any evidence of an alibi or witnesses who might have testified at trial.  "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996).  Neither the post-conviction court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Black*, 794 S.W.2d at 757.  Additionally, trial counsel testified that no witnesses were present during the offenses.  Trial counsel also testified that he met numerous times with the state, had all the information that the state had in its files, and went to at least one location where an offense took place.  Therefore, we conclude that the petitioner failed to show that counsel was deficient in not filing a notice of alibi or a request for funds to hire an investigator, and he failed to prove that counsel did not properly investigate or prepare for trial.  Finally, trial counsel made a tactical decision not to attempt to put the victim's sexual history before the jury because her history tended to bolster her credibility, and the petitioner has not shown that counsel's tactical decision was professionally unreasonable.  Furthermore, the petitioner presented no evidence that the outcome of the proceedings would have been different but for counsel's errors.  We conclude that the petitioner has not met his burden of proving that trial counsel's performance was deficient and prejudicial to the defense.  The petitioner is without relief in this matter.

**Conclusion**

Based on the foregoing reasons, we affirm the denial of post-conviction relief.

_____
J.C. McLIN, JUDGE